IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:09cv36

| | |
|---|---|
| **BENJAMIN TATE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| Vs. ) | |
| ) | **MEMORANDUM OF** |
| **NC PEPSI-COLA BOTTLING** ) | **DECISION AND ORDER** |
| **COMPANY OF CHARLOTTE, INC.,**[1] ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

This matter is before the court on a motion for summary judgment by Defendant Bottling Group, LLC [docket #21].

### I.     Background

This is an employment discrimination action in which plaintiff has filed claims against defendant for violation of the Americans with Disabilities Act; race discrimination under Title VII and 42 U.S.C. § 1981; and intentional infliction of emotional distress.

### II.    Undisputed Facts

Plaintiff, an African-American male who suffers from diabetes, was employed as a vending/cooler delivery driver for defendant beginning in August 2004. Plaintiff's position required him to deliver and restock Pepsi product in stores, businesses, and freestanding vending machines on a pre-determined route. (Affidavit of Mitzi T. Gechter ¶ 5, Ex. A. to

---

[1] The correct corporate defendant is Bottling Group LLC.

1

Def.'s Br. Supp. Mot. Summ. J., docket no. 22.) As part of his delivery driver responsibilities, plaintiff operated a 10,000-plus pound truck filled with defendant's merchandise on Charlotte-area streets and highways. (*Id*.)

Because defendant's fleet includes commercial motor vehicles, defendant is required to comply with Department of Transportation ("DOT") rules and regulations governing the operation of oversized vehicles. (*Id*. ¶ 6.) DOT regulations require defendant's drivers to pass a physical examination given by an independent physician before receiving the certification necessary to operate a vehicle legally. *See* 49 C.F.R. §§ 391.41, 391.43(f), 391.45. To comply with the DOT regulations, defendant requires all of its employees to pass DOT certification before being permitted to drive. (Gechter Aff. ¶ 6.)

After working for defendant for approximately two years without incident, plaintiff made numerous trips to a Charlotte-area emergency room over the course of several days because he believed he was a danger to himself and others. He was eventually admitted to Gaston Memorial Hospital's psychiatric ward for in-patient treatment for what treating physicians ultimately diagnosed as "psychotic disorder . . . with paranoid delusions," with possible schizophreniform disorder.[2] (*See* Ex. L to Def.'s Br. Supp. Mot. Summ. J., docket no. 22.)

---

[2] Plaintiff denies that he has schizophrenia. Whether plaintiff is suffering from schizophrenia is not determinative of plaintiff's ADA claim. As the court will discuss, *infra*, defendant's denial of plaintiff's request to return to his job as a delivery driver was not based on a determination by defendant that plaintiff was suffering from schizophrenia. Rather, defendant's decision was based on the fact that plaintiff had not obtained a DOT medical certification to be a driver as required by DOT regulations.

Plaintiff took a disability related leave of absence from December 14, 2006, until his return to defendant's facility on February 5, 2007. (Gechter Aff. ¶ 10.) When plaintiff returned from his two-month leave of absence, defendant sent him for medical re-certification pursuant to the DOT regulations.[3] (*Id*. ¶ 11.) Plaintiff was unable to obtain the required DOT certification. (*Id*. ¶ 14.) Defendant, therefore, refused to allow plaintiff to continue in his position as a driver. Defendant offered to let plaintiff apply for other positions within the company that did not require the required DOT certification, but plaintiff refused such positions.[4]

Plaintiff filed a complaint in this court on February 1, 2009. Plaintiff brings the following claims against defendant: race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981; disability discrimination under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq.; and intentional infliction of emotional distress.

### III. Standard of Review on Summary Judgment

Summary judgment is appropriate when there exists no genuine issue of material fact

---

[3] The DOT regulations provide that "any driver whose ability to perform his/her normal duties has been impaired by a physical or mental injury or disease . . . must be medically examined and certified in accordance with § 391.43 as physically qualified to operate a commercial motor vehicle." 49 C.F.R. § 391.45.

[4] In his brief, plaintiff disputes defendant's contention that defendant attempted to help find plaintiff a non-driver position within defendant's facility. Plaintiff has admitted, however, that he has not alleged a reasonable accommodation claim. Thus, this factual dispute is not relevant to plaintiff's disability discrimination claim.

3

and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a factfinder to return a verdict for that party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

  **IV.**  **Analysis**

  1.  Plaintiff's ADA Disability Claim

To prove a violation of the ADA, plaintiff must show that (1) he had a disability; (2) that he was qualified for defendant's vending/cooler delivery driver position; and that (3) defendant refused to allow plaintiff to return to the delivery driver position solely on the

4

basis of his disability.[5] *See Myers v. J.D. Hunt Transport, Inc.*, No. 1:05CV00717, 2006 WL 3479001, at *2 (M.D.N.C. Nov. 30, 2006) (establishing prima facie elements of a disability claim related to a DOT truck driving position); *Swanson v. Med. Action Indus., Inc.*, 343 F. Supp. 2d 496, 499 (W.D.N.C. 2004). As part of the first and second prong of his prima facie case, plaintiff must establish that he was a "qualified individual." To do so, plaintiff must show that he was "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that [he] holds." 42 U.S.C. § 12111(8). Although the ADA is designed to protect individuals from discrimination based on medical conditions, "the ADA explicitly recognizes that employers may establish job qualification standards that ultimately have the effect of denying employment to disabled persons based on a disability."[6] *Myers*, 2006 WL 3479001, at *2.

Here, plaintiff denies that he suffers from schizophrenia. (Affidavit of Benjamin Tate ¶ 50, Ex. 1, Pl.'s Br. Response to Mot. Summ. J., docket no. 49.) He contends that his qualifying disability is diabetes. Even assuming that plaintiff's diabetes is a qualifying

---

[5] The Fourth Circuit has held that the *McDonnell Douglas* burden-shifting scheme used in Title VII actions also applies to ADA claims. *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995). The court recites the *McDonnell Douglas* burden-shifting scheme in the discussion of plaintiff's Title VII claim, *infra*.

[6] The regulations implementing the ADA state:

It may be a defense to a charge of discrimination under this part that a challenged action is required or necessitated by another Federal law or regulation, or that another Federal law or regulation prohibits an action (including the provision of a particular reasonable accommodation) that would otherwise be required by this part.

26 C.F.R. § 1630.15(e).

disability, his inability to obtain DOT certification after his leave of absence left him unable to drive a delivery truck. This rendered him unqualified to perform the essential functions of his position as a vending/cooler delivery driver and results in the failure of his ADA claim. *See Bay v. Cassens Transport Co.*, 212 F.3d 969, 974 (7th Cir. 2000) ("Under applicable DOT regulations, [defendant] was not allowed to permit [plaintiff] to resume driving until he produced a copy of a doctor's certificate indicating he was physically qualified to drive, . . . and nothing in the ADA purports to change that obligation.") (citing *Thoms v. ABF Freight Sys., Inc.*, 31 F. Supp. 2d 1119, 1127 (E.D. Wis. 1998) ("The ADA does not override health and safety requirements established under other Federal laws.") (quoting EEOC Technical Assistance Manual at IV-16)); *see also* 29 C.F.R. § 1630.15(e) (noting that the existence of a conflicting federal law is a possible defense to an ADA discrimination claim).

Plaintiff argued in his brief in his response to the motion for summary judgment that plaintiff in fact did obtain a medical certification when he re-applied for certification after his disability leave. As defendant notes in its reply brief, however, plaintiff's "recertification" argument is based on the fact that the record contains some opinions from medical doctors that plaintiff should be recertified. (*See* Letter from Clifford K. Callaway to Mitzi Gechter (Aug. 27, 2007), Ex. Q, Def.'s Br. Supp. Mot. Summ. J., docket no. 22.) The fact is, however, plaintiff did not receive a DOT medical certification, and a letter from a physician opining that plaintiff should be recertified does not constitute DOT medical

certification.[7] In sum, because plaintiff could not obtain DOT certification to resume his position as a delivery driver, he was not a "qualified individual" within the meaning of the ADA.

Here, the court is certainly sympathetic to plaintiff. Defendant stated at the hearing before the court on defendant's motion for summary judgment that plaintiff had been a well-liked and good employee. Indeed, plaintiff's own direct supervisor has described plaintiff in the following manner: "Mr. Tate was known throughout the Facility as a good employee who was kind and courteous. He was well-liked by his co-workers. I do not recall having any difficulties with him." (Declaration of John Franklin Elliott, Ex. E, Def.'s Br. Supp. Mot. Summ. J., docket no. 22.) Unfortunately for plaintiff, pursuant to DOT regulations, defendant simply had no other choice but to deny plaintiff's request to return to his position as a delivery driver in light of the fact that plaintiff was unable to obtain DOT certification. Because plaintiff had not obtained DOT certification, he was therefore not a "qualified individual" within the meaning of the ADA. Defendant is therefore entitled to summary

---

[7] The record indicates that one of plaintiff's treating physicians recommended recertification on August 21, 2007. Dr. Clifford K. Callaway recommended DOT recertification based on plaintiff's representations in a DOT form that plaintiff had not taken medications for the past five years. In a follow-up letter just six days later, however, Dr. Callaway noted that he had relied on incorrect information in determining that plaintiff should be certified in that the record evidence showed that plaintiff had taken medications within the past five years. (*See* Letter from Clifford K. Callaway to Mitzi Gechter (Aug. 27, 2007), Ex. Q, Def.'s Br. Supp. Mot. Summ. J., docket no. 22.) Indeed, the record shows that plaintiff was prescribed anti-psychotic medication after his stay in the Gaston Hospital psychiatric ward. (*See* Ex. L to Def.'s Br. Supp. Mot. Summ. J., docket no. 22.) Dr. Callaway stated that he was therefore withdrawing his recommendation regarding re-certification. Thus, contrary to plaintiff's suggestion that he did in fact obtain a DOT certification after returning from disability leave, plaintiff simply did not obtain DOT certification, and he was, therefore, not qualified to continue in his position as a delivery driver for defendant.

judgment as to plaintiff's ADA disability discrimination claim.

  2.  Plaintiff's Race Discrimination Claim under Title VII and Section 1981

Title VII makes it unlawful for an employer:

> to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1). Section 1981 of Title 42 of the United States Code provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). It is well settled that Section 1981 employment discrimination claims are subject to the same merits analysis as Title VII claims. *See Lightner v. City of Wilmington*, 545 F.3d 260, 263 n.* (4th Cir. 2008).

To satisfy ordinary principles of proof in discrimination cases, a plaintiff must provide direct evidence of a purpose to discriminate or circumstantial evidence of sufficiently probative force to raise a genuine issue of material fact. *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988). Because it is often difficult for a plaintiff to provide direct evidence of discriminatory intent, the Supreme Court has created a burden-shifting structure for analyzing such claims. *See McDonnell Douglas v. Green*, 411 U.S. 792 (1973). Under this burden-shifting structure, known as the "McDonnell Douglas" framework, the plaintiff must plead facts sufficient to create an inference that an adverse employment decision was based on impermissible considerations. This may be done by showing that (1) the plaintiff

is a member of a protected class; (2) the plaintiff was otherwise qualified for the position; (3) the plaintiff suffered an adverse employment action; and (4) the action took place under conditions establishing an inference of discrimination. *See id.* at 802.

Once a plaintiff establishes a prima facie case, the burden then shifts to the defendant to demonstrate a legitimate, nondiscriminatory reason for the challenged action. *Id.* If the employer demonstrates a legitimate, nondiscriminatory reason, the presumption of unlawful discrimination created by the prima facie case "drops out of the picture," and the burden shifts back to the employee to show that the given reason was merely a pretext for discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993); *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 57-58 (4th Cir. 1995). The responsibility of proving that "the protected trait . . . actually motivated the employer's decision" remains with the plaintiff at all times. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). To overcome a motion for summary judgment in such a case, a plaintiff must provide direct or circumstantial evidence "of sufficient probative force" to show a genuine issue of material fact exists as to this question. *Goldberg*, 836 F.2d at 848. With these principles in mind, the court now turns to plaintiff's race discrimination claim. Because plaintiff has failed to provide any direct evidence of race discrimination, the Court must apply the burden-shifting framework of *McDonnell Douglas*.

Plaintiff's race discrimination claim is based on his contention that he was treated differently from a similarly situated white employee. Essentially, plaintiff contends that he has Type II diabetes and that a white employee who also has Type II diabetes, Ike Petit, was

9

allowed to continue as a driver for defendant, whereas defendant refused to allow plaintiff to continue as a driver. (Gechter Aff. ¶ 15.) Plaintiff contends that defendant treated Petit more favorably than plaintiff by allowing Petit to work as a delivery driver despite Petit's diabetes diagnosis. Petit, however, is not a valid comparator. That is, DOT guidelines mandate yearly re-certification as a matter of course for individuals with diabetes. Petit's re-certification stemmed from this requirement and not as a result of an extended disability related leave of absence due to schizophrenia. (Gechter Aff. ¶ 15.) More significantly, however, unlike plaintiff, Petit actually obtained his DOT certification and was therefore eligible to return to his driver position. (*Id*. ¶ 16.) In sum, plaintiff's race discrimination claim cannot survive defendant's summary judgment motion because plaintiff has failed to show that he was similarly situated to Petit. Thus, summary judgment will be granted to defendant as to plaintiff's race discrimination claim under Title VII and Section 1981.

3. Plaintiff's Emotional Distress Claim

To state a claim for intentional infliction of emotional distress under North Carolina law, a plaintiff must allege that the defendant "(1) engaged in extreme and outrageous conduct, (2) which was intended to cause and did cause (3) severe emotional distress." *S. Furniture Hardware, Inc. v. BB&T*, 526 S.E.2d 197, 201 (N.C. App. 2000) (quoting *Bryant v. Thalhimer Bros., Inc.*, 437 S.E.2d 519, 522 (N.C. App. 1993)). For conduct to be considered extreme and outrageous, the conduct must "exceed[] all bounds usually tolerated by decent society." *Fieldcrest Cannon, Inc. v. Fireman's Fund Ins. Co.*, 477 S.E.2d 59, 72 (N.C. App. 1996) (quoting *Stanback v. Stanback*, 254 S.E.2d 611, 622 (N.C. 1979)).

Whether a defendant's alleged conduct is extreme and outrageous is a question of law for the court. *Stamper v. Charlotte-Mecklenburg Bd. of Educ.*, 544 S.E.2d 818, 820 (N.C. App. 2001).

Here, defendant is entitled to summary judgment on plaintiff's emotional distress claim because defendant's refusal to allow plaintiff to continue working as a driver was not "extreme and outrageous." Neither defendant's requirement that plaintiff obtain DOT certification, nor its reliance on the medical opinion of the physicians conducting plaintiff's certification examinations, amounted to extreme and outrageous conduct. Indeed, as noted, defendant was acting in accordance with federal law in requiring its drivers to have DOT certification. In sum, defendant is entitled to summary judgment as to plaintiff's claim for intentional infliction of emotional distress.

## V. Conclusion

For the reasons stated herein, the court grants defendant's motion for summary judgment [docket #21], and plaintiff's claims are dismissed with prejudice.

**IT IS SO ORDERED**.

Signed: August 29, 2011

Max O. Cogburn Jr.
United States District Judge